UNITED STATES of America, Appellee,

v.

Samuel W. GAY, Defendant–Appellant.

No. 1638, Docket 93–1145.

United States Court of Appeals,
Second Circuit.

Argued Aug. 12, 1994.

Decided Dec. 27, 1994.

Barbara Guss, Asst. U.S. Atty. (Mary Jo White, U.S. Atty., S.D.N.Y., New York City, Paul G. Gardephe, Asst. U.S. Atty., of counsel), for appellee.

David G. Secular, New York City, for defendant-appellant.

Before: WINTER and LEVAL, Circuit Judges and GAGLIARDI, District Judge.*

New York, sitting by designation.

LEVAL, Circuit Judge:

Defendant Samuel W. Gay appeals from a sentence entered on February 24, 1993, by the United States District Court for the Southern District of New York, Vincent L. Broderick, *Judge,* following his conviction after a jury trial on April 26, 1992, of twelve counts of perjury in violation of 18 U.S.C. § 1623. Gay was sentenced to 30 months' imprisonment, three years' supervised release and a $600 special assessment. He contends on appeal that he was sentenced under the wrong guideline. We disagree and affirm the sentence.

### Background

While the defendant Gay was employed as a corrections officer at the Westchester County Jail, he met an inmate named Kamau Anyabwile, who was serving time for burglary. Anyabwile was eventually released, but was later arrested in the course of a fur robbery in March of 1989. After his arrest, Anyabwile told the authorities that Gay had participated in a number of robberies with Anyabwile, including the robbery of the Educational and Government Employees Federal Credit Union in New Rochelle, New York (the "Credit Union"). Anyabwile began co-operating with the government and placed a series of tape-recorded telephone calls to Gay.

During these taped conversations, Gay and Anyabwile discussed various robberies they had committed, mentioning several participants in those robberies. In one such conversation, Anyabwile reminisced with Gay about a fur robbery in which Gay had fenced the stolen furs. Gay referred to the stolen furs as "lunchmeat."

On September 6, 1989, Anyabwile pleaded guilty to racketeering charges. Several months later, on February 15, 1990, Gay was called to testify before a federal grand jury investigating armed robberies in Westchester County. He was asked a series of questions about the robberies in which he was allegedly involved. Gay denied having discussed robberies with Anyabwile, denied knowing any of Anyabwile's associates (whom Gay had discussed in the taped telephone conversations), denied using the term "lunchmeat" in a conversation with Anyabwile, and denied casing a business or bank, planning a robbery or sharing in the proceeds of a robbery.

On August 8, 1991, Gay was indicted for conspiring to commit armed robbery of the Credit Union, and for numerous counts of perjury while testifying before the grand jury. Trial commenced on April 20, 1992. Anyabwile testified pursuant to a cooperation agreement about Gay's involvement in the Credit Union robbery, his role in various other robberies, and the recorded telephone conversations. The jury acquitted Gay of conspiracy to rob the Credit Union and of two perjury counts, but convicted him on the twelve remaining counts of perjury.

To arrive at its recommended sentencing range, the Probation Department referred first to U.S.S.G. § 2J1.3, the guideline applicable to perjury convictions, but read that section as requiring that sentence be governed by § 2X3.1, the guideline for an accessory after the fact, because Gay's perjury was committed "in respect to" the robbery of the Credit Union. The recommended sentence was therefore in accordance with § 2X3.1, at offense level 16, with a range of 24 to 30 months' imprisonment (because Gay fell in Criminal History Category II), rather than at level 12, provided by § 2J1.3 (12 to 18 months). The district court followed this reasoning and sentenced Gay to 30 months' imprisonment. This appeal followed.

### Discussion

On appeal, Gay contends that the district court erroneously applied U.S.S.G. § 2X3.1, the guideline for an accessory after the fact. He contends that, having been convicted of perjury, he should have been sentenced under § 2J1.3, the perjury guideline.

Section 2J1.3 provides a base offense level of 12 for perjury. However, subparagraph (c) provides

[i]f the offense involved perjury ... *in respect to a criminal offense,* apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than [the 12 levels] determined above. § 2J1.3(c) (emphasis added).

The application of § 2X3.1, on the theory that Gay's perjury was "in respect to" the crime of conspiracy to rob the Credit Union,

produced an offense level of 16, because that section directs that the offense level be placed "6 levels lower than the offense level for the underlying offense," U.S.S.G. § 2X3.1, and the level for the conspiracy would have been 22. *See* U.S.S.G. §§ 2X1.1(a), 2B3.1.

Gay maintains that because he was acquitted of the conspiracy to rob the Credit Union, and because the court made no finding that his perjury was designed either to assist that conspiracy or to hinder the investigation of that crime, he could not be sentenced as an accessory after the fact. He therefore contends it was inappropriate to sentence him under § 2X3.1. We disagree.

Gay was not sentenced under § 2X3.1 because he was found to be an accessory after the fact. He was sentenced under that provision because the guideline applicable to perjury, the crime, of his conviction, directs that he be sentenced instead under § 2X3.1 if his perjury is found to have been committed "in respect to a criminal offense" (and if reference to § 2X3.1 would produce a higher offense level). The district court correctly found that those conditions applied and therefore correctly sentenced Gay under § 2X3.1, even though Gay had not been found to be an accessory after the fact.

Thus, the district court found that the crime of conspiracy to rob the Credit Union had unquestionably been committed, regardless whether Gay was involved in it. Furthermore, some of Gay's perjuries unquestionably related to that crime. For example, Gay was convicted under Count Seven of falsely denying any knowledge concerning the Credit Union robbery. The district court was fully justified in finding that this perjury was "in respect to" the conspiracy to rob the credit union. § 2J1.3(c). The court then appropriately referred to § 2X3.1, without any need to determine whether Gay was an accomplice after the fact.

### Conclusion

The judgment of the district court is affirmed.