

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-2003

# USA v. Chinnery

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1299

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Chinnery" (2003). *2003 Decisions.* Paper 429.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/429

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 03-1299

UNITED STATES OF AMERICA

v.

WAYNE CHINNERY,

<u>Appellant</u>

On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 01-cr-00321)
District Judge: Hon. Thomas K. Moore

Argued April 30, 2003

BEFORE: ROTH, McKEE and COWEN, <u>Circuit Judges</u>

(Filed:   June 26, 2003)

Stephen A. Brusch, Esq. (Argued)
International Plaza
Suite 2G
P.O.Box 988
Charlotte Amalie, St. Thomas
USVI, 00804

        Counsel for Appellant

Anthony J. Jenkins, Esq. (Argued)
Office of United States Attorney
United States Courthouse
5500 Veterans Building, Suite 260
Charlotte Amalie, St. Thomas
USVI, 00802-6924

       Counsel for Appellee

------

OPINION

------

COWEN, <u>Circuit Judge</u>.

Wayne Chinnery was indicted in the District Court of the Virgin Islands on four counts of perjury in violation of 18 U.S.C. § 1623. Following trial to a jury, Chinnery was convicted on all counts and sentenced to thirty-six months imprisonment. Chinnery appeals raising a host of constitutional, statutory, evidentiary, and procedural challenges to his conviction and sentence. We find no error in the District Court's rulings and will therefore affirm.

## BACKGROUND

This case arises out of Chinnery's testimony during a trial for civil rights violations and assault. As we write for the parties, we only briefly explain the events leading to this appeal.

In 2000, Chinnery served as the Acting Director of the Narcotics Strike Force, a law enforcement agency of the Government of the Virgin Islands. Chinnery's post included a street patrol detail in the Savan area of St. Thomas. On the evening of May

21, 2000, Chinnery was involved in an altercation while responding to a report of disorderly behavior and drug possession. As a result of that incident, the United States obtained an indictment charging Chinnery with violating the civil rights of Charese Huggins, possessing a firearm during a crime of violence, and assault.

A jury trial on these charges was conducted in October 2001 (the "Huggins Trial"). Chinnery testified as the only defense witness. At the beginning of his direct examination, Chinnery provided the following description of his educational background:

Q: Did you go to school in St. Thomas?

A: Yes, I did.
. . .
Q: Did you go on to college?

A: Yes, I did.

Q: And where did you go to college?

A: I began at the College of the Virgin Islands, which is now the University of the Virgin Islands. And then I went to Ho[f]stra University, and eventually, Ho[f]stra University School of Law.

Q: Did you obtain any degree from Ho[f]stra University?

A: Yes, I obtained a BA and eventually a Jurist Doctrorate [*sic*] degree.

Chinnery also testified as to his professional experience:

Q: Mr. Chinnery, what are some of the jobs that you have had?

A: Oh, in the last, in the last fifteen years I served as Director of Labor Relations in the Department of Labor. I worked as an associate in a couple of law firms here in the Virgin Islands. And eventually I worked as the Drug Policy Advisor to the Governor from 1999 until 2000.

3

Chinnery reiterated these claims on cross-examination:

Q:      [S]ir, you said you got a college degree, is that correct? . . . A college degree, is that correct? You graduated from Ho[f]stra?

A:      Yes, I did.

Q:      You got a Jurist Doctorate [*sic*] degree, which means you are an attorney?

A:      Yes, sir.

Q:      Is that correct?

A:      Yes, sir.

Q:      And as an attorney you got training on how to answer and ask questions—didn't you, sir?

A:      Yes, sir.

The jury ultimately found Chinnery not guilty on all counts.

After Chinnery's acquittal, the government discovered that Chinnery had fabricated much of his background. Contrary to his testimony, Chinnery did not graduate from college, and did not graduate, or even attend, law school. Chinnery did not, therefore, ever practice as an attorney, and never worked as an associate in any law firm. Chinnery was indicted on four counts of perjury in violation of 18 U.S.C. § 1623 based on his erroneous testimony that: 1) he held a Bachelor of Arts degree from Hofstra University; 2) he had attended the Hofstra University School of Law, and received a Juris Doctorate degree; 3) he was an attorney; and 4) he had worked as an associate in several law firms. A two-day jury trial resulted in a judgment of conviction on all four counts.

4

The District Court sentenced Chinnery to thirty-six months imprisonment, three years of supervised release, and a mandatory $400.00 special assessment. Chinnery filed a timely notice of appeal and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

Chinnery argues that 1) the government's evidence was insufficient to prove his false statements were material to the issues at the Huggins Trial; 2) the District Court erred in admitting evidence of prior false declarations; 3) the government's re-examination of a witness improperly introduced expert testimony; 4) the District Court erroneously instructed the jury on the issue of materiality; 5) the District Court improperly permitted a portion of the transcript from the Huggins Trial to be read to the jury; 6) the District Court erred in granting the government's *Batson* challenge; and 7) the District Court improperly applied the sentencing guidelines. We discuss each argument in turn.

## I.

Chinnery first argues that government's evidence was insufficient to support a jury finding that his false statements were material to the issues in the Huggins Trial. To prove a violation of 18 U.S.C. § 1623(a), the government was required to show that Chinnery knowingly made a material false declaration during the Huggins Trial. Chinnery did not dispute that he knowingly made the four false statements at issue. Instead, he argued that his false testimony was not material to the issues before the jury.

We have explained that "[o]ur review of the sufficiency of the evidence after a

5

guilty verdict is 'highly deferential'." *United States v. Hodge*, 321 F.3d 429, 439 (3d Cir. 2003) (quoting *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001)). "When deciding whether a jury verdict rests on legally sufficient evidence it is not for us to weigh the evidence or to determine the credibility of the witnesses. Rather, we must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation omitted).

A false statement is material within the meaning of § 1623 if the statement "has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a particular determination." *United States v. Barrett*, 111 F.3d 947, 953 (D.C. Cir. 1997); *see also United States v. Adams*, 870 F.2d 1140, 1147 (6th Cir. 1989) ("The test of whether a false declaration satisfies the materiality requirement is whether a truthful statement might have assisted or influenced the tribunal in its inquiry."). The materiality requirement is construed broadly. *United States v. Regan*, 103 F.3d 1072, 1084 (2d Cir. 1997). Accordingly, the statements "need not be material to any particular issue, but may be material to collateral matters that might influence the court or the jury" in its decisions. *United States v. Abroms*, 947 F.2d 1241, 1248 (5th Cir. 1991) (quoting *United States v. Damato*, 554 F.2d 1371, 1373 (5th Cir. 1977)).

Chinnery argues that his false statements were not relevant to the elements of § 1623, or his credibility as a witness. Chinnery contends that because he never testified

6

that he was more believable because of his purported education and experience, his false claims could not have influenced the jury's decision on the ultimate issues. Chinnery thus concludes that his falsities "were a trifling collateral circumstance to the issue in dispute."

Long ago, we held that false statements implicating a witness's credibility are material under the federal perjury statute. *United States v. Weiler*, 143 F.2d 204, 205-06 (3d Cir. 1944), *rev'd on other grounds*, 323 U.S. 626 (1945). In *Weiler*, we explained that materiality considers whether, in light of the trial as a whole, the false statement "was capable of influencing the tribunal on the issue before it." *Id*. at 206 (quoting *Blackmon v. United States*, 108 F.2d 572, 573 (5th Cir. 1940)). Therefore, the false statement might be material when "calculated and intended to prop and bolster the testimony of the witness on some material point," by "clothing it with circumstances which . . . strengthen the credibility of the witness." *Id*. (citation omitted).

Here, the record indicates that Chinnery's false statements were part of a false self-portrait that conveyed a knowledge of the law and the legal process. That image was certainly relevant to Chinnery's testimony that his actions did not exceed the boundaries of legitimate self-defense:

> Q: Mr. Chinnery, tell the jury whether or not you believe that you used excessive force that evening?
>
> A: . . . I did not use excessive force. . . . No, I did not.

Moreover, Chinnery re-iterated his fabrications during the government's cross-examination even as the prosecutor sought to attack his credibility. If Chinnery had

7

answered these questions truthfully, the jury may have discounted other aspects of his testimony, including his account of the evening in question, and his opinions as to excessive force. Indeed, Chinnery's counsel reminded the jury during closing arguments that Chinnery "was not impeached" and "was not contradicted," characterizing his testimony as "firm and convincing."

Chinnery's testimony was a central issue at the Huggins Trail, as the jury was asked to choose between his version of the events, or that offered by the victim. Chinnery's false statements were capable of influencing the jury on that issue, and his inflated credentials clothed his testimony with circumstances that strengthened his credibility. Viewing the evidence in the light most favorable to the government, the jury could have found the element of materiality in § 1623 beyond a reasonable doubt.

## II.

Chinnery next argues that the District Court improperly admitted evidence of Chinnery's prior false declarations. Over objection, the District Court admitted evidence of several instances in which Chinnery had falsely represented his background, including: 1) a voter registration card listing Chinnery's profession as "attorney"; 2) a newspaper interview where Chinnery stated he was an attorney; and the 3) testimony of Virgin Islands' officers that Chinnery had represented himself as an attorney. We review the District Court's decision on the admissibility of evidence for an abuse of discretion. *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d Cir. 2000).

8

The Federal Rules of Evidence define relevant evidence as anything "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. We will give "substantial deference" to the District Court's discretionary determination that probative value outweighed prejudice under Rule 403. *Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3d Cir. 2000).

Chinnery argues that his prior fabrications were irrelevant to the government's burden of proving the elements of § 1623. However, the government's burden included demonstrating that Chinnery falsely and knowingly testified that "in the last fifteen years . . . I worked as an associate in a couple of law firms here in the Virgin Islands." Chinnery's prior public claims to be licensed as an attorney provided circumstantial evidence that his trial testimony was no mere mistake, but rather deliberately and knowingly false. *Serafini*, 233 F.3d at 770 (recognizing that the requirement of knowledge under § 1623 may be proven by circumstantial evidence); Fed. R. Evid. 404(b) (allowing evidence of other crimes or wrongs in order to show knowledge or the absence of mistake).

Nor was the admission of these items unfairly prejudicial. Chinnery argues that the admission of his prior false statements served only to permit the jury to decide the

case on an improper emotional basis. We see no meaningful difference between Chinnery's prior statements and his statements at Huggins Trial, as each instance comprised the same misrepresentation of his background. Moreover, the government also demonstrated that Chinnery had obtained his position as the Director of the Narcotics Strike Force by relying on his false education. This fact necessarily placed Chinnery's prior false statements before the jury. Therefore, the District Court did not abuse its discretion in concluding that Chinnery's past statements would not allow the jury to convict by "illegitimate means." *United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992).

**III.**

Chinnery also argues that the testimony of a government witness included unqualified expert opinions that did not assist the jury's determinations. We review for an abuse of discretion. *Serafini*, 233 F.3d at 768 n.14.

Barry Williams, one of the prosecuting attorneys from the Huggins Trial, testified for the government at the perjury trial. On cross-examination, Chinnery's counsel engaged in the following line of questioning:

> Q:     Now, you believe that in your number of years, the five years that you have been practicing law and have been admitted to more than one jurisdiction . . . you have confidence that the jury is capable of doing a good and fair assessment of the facts . . . .? [I]t is your opinion that the jury is fair, sophisticated enough, to have reached a conclusion as to Mr. Chinnery's guilt or innocence, and not make a determination that he was not guilty just because of the credentials and qualification he stated in that trial

A: . . . I believe that any jury in the Virgin Islands, or anywhere in the United States, if given all of the facts, can come to a conclusion. But in my—the case that we tried, they were not given all of the facts.

Q: But my question to you, sir, is just simple: Do you believe that the jury found him not guilty just because of the credentials he stated before that jury?

The government then asked the witness on re-direct examination "is it your legal opinion that these false statements made by Mr. Chinnery either had a natural tendency to—or were capable of influencing the jury's decision as to a material matter in that case."

The government argues that Chinnery "opened the door" to its re-direct question by essentially asking Williams for his legal opinion on cross-examination. We have explained that "opening the door," better known as the doctrine of curative admissibility, provides that once a party introduces inadmissible evidence, the opposing party may introduce otherwise inadmissible evidence to rebut or explain the first offering. *Gov't of the Virgin Islands v. Archibald*, 987 F.2d 180, 187 (3d Cir. 1993). As the government does not argue that Williams's testimony on cross-examination was inadmissible, the doctrine of curative admissibility is inapplicable.

A related evidentiary doctrine known as the principle of completeness states that a witness may be questioned as to the basis, motive, or reasons for an opinion, elicited on cross-examination. *Id*. at 187-88; *see also United States v. Davis*, 183 F.3d 231, 256 (3d Cir. 1999); *United States v. Walker*, 421 F.2d 1298, 1299 (3d Cir. 1970). Here, the defense used its cross-examination of Williams to establish the witness's legal credentials, before asking whether, in his opinion, the jury acquitted Chinnery "just

11

because of the credentials he stated." These questions placed Williams's legal opinion on the materiality of Chinnery's false statements before the jury. Under these circumstances, the government reasonably sought to probe the full basis for Williams's testimony, and the reasons for his opinion. *See Walker*, 421 F.2d at 1299 ("If the Government had failed to clarify the situation, the jury might well have been unfavorably impressed . . . ."). Viewing the government's questions in the context of the defense cross-examination, we are satisfied that the re-direct examination was within the District Court's discretion.

**IV.**

Chinnery challenges a portion of the District Court's instruction to the jury on the issue of materiality. The District Court's explanation of the law included the following illustration:

> [S]tatements intended to embellish the defendant's resume or credentials as a law enforcement officer or drug czar, and to enhance his believability or credibility compared to witnesses who testified against him at that trial, would be material as the term is used in this perjury indictment before you.

Chinnery argues that this single statement removed the question of materiality from the jury's consideration.

In reviewing a challenge to a jury instruction, "we consider the totality of the instructions and not a particular sentence or paragraph in isolation." *Gov't of the Virgin Islands v. Fonseca*, 274 F.3d 760, 767 (3d Cir. 2001) (quoting *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995)). So viewed, we will uphold the instructions "if the charge as a whole fairly and adequately submits the issues in the case to the jury." *Id.*

12

(citations omitted). Here, the District Court explained the legal definition of materiality, and instructed that the government must prove materiality as to each of the four false statements. The District Court stressed that the jury alone must determine the facts, and whether the alleged false statements had a tendency or were capable of influencing the jury in the Huggins Trial. Finally, the District Court cautioned the jury to consider its instructions as a whole, and to avoid placing undue emphasis on any single charge. Viewed as a whole, we are satisfied that the District Court's comprehensive instructions fairly and adequately submitted the issue of materiality to the jury. *See United States v. Milan*, 304 F.3d 273, 285-86 (3d Cir. 2002). Accordingly, we find no prejudice in the District Court's instructions.

## V.

Chinnery also argues that the District Court erred in allowing the oral publication of incomplete excerpts from the Huggins Trial. Chinnery argues that introduction of the entire transcript from the Huggins Trial was necessary to allow the jury to determine the materiality of Chinnery's false statements. We disagree.

In *United States v. Leon-Reyes*, 177 F.3d 816 (9th Cir. 1999), the Ninth Circuit considered a similar objection to the introduction of summarized testimony in a perjury trial. The court noted the numerous advantages of admitting summaries instead of a full trial transcript: the testimony can be redacted to short summaries tending to prove materiality; prejudicial material may be excluded; relevant testimony is presented to the

13

jury in a clear and coherent manner. *Id*. at 820. The Court noted, however, that because summaries are prepared by the interested parties, the District Court must scrutinize the summaries "to ensure that they are accurate, complete, not unduly prejudicial, limited to the relevant issues, and confined by appropriate jury instructions." *Id*.

Here, the District Court utilized the summaries to avoid admitting prejudicial material. The court instructed the jury that the summaries were not being offered to prove the truth of the testimony, but to identify the issues at the Huggins Trial. The District Court further instructed the government to read only the relevant portions of the transcript. These safeguards are similar to the protections outlined in *Leon-Reyes*, and sufficient to protect Chinnery from any undue prejudice. *Id*.

The jury was not asked to determine whether Chinnery's false statements alone resulted in his acquittal. Rather, the jury considered whether his false testimony was capable of, or had a natural tendency to, influence the Huggins Trial jury. Given this limited function, the introduction of the entire trial transcript, rife with potential prejudice and irrelevancy, would not have been helpful. Under these circumstances, the District Court did not abuse its discretion in admitting the summaries into evidence.

## VI.

We need only briefly address Chinnery's argument that the District Court failed to properly evaluate the government's *Batson* objection. In evaluating an objection to a peremptory challenge based on race, a district court first considers whether the objector

14

has established a prima facie case. *United States v. Milan*, 304 F.3d 273, 280 (3d Cir. 2002). Five factors are relevant to a prima facie case: 1) the number of racial group members in the panel; 2) the nature of the crime; 3) the race of the defendant; 4) a pattern of strikes against racial group members; and 5) the questions and statements during the voir dire. *United States v. Clemons*, 843 F.2d 741, 748 (3d Cir. 1988). If the district court is satisfied with the objector's showing, the party defending the challenges must rebut the prima facie case by tendering a race-neutral explanation for each stricken juror. *Id.*

Here, forty-five potential jurors appeared for service, six of whom were Caucasian. The defense used its first four peremptory challenges to strike the four Caucasians then seated in the jury box. The government objected, arguing that the defendant's challenges of each and every Caucasian juror demonstrated an impermissible racial bias. Given the small number of Caucasians on the panel, Chinnery's race, and the use of four challenges to successively remove the seated Caucasians, the circumstances are sufficient to establish a prima facie *Batson* violation. *See Simmons v. Beyer*, 44 F.3d 1160, 1168 (3d Cir. 1995) (prima facie case shown by the defendant's race and the exclusion of at least one potential juror). In response, the defense was unable to articulate a race-neutral explanation for striking two of the jurors, and even conceded that one was "okay."

The District Court's findings are supported by the record, and hence, we must accept its conclusion. *United States v. Uwaezhoke*, 995 F.2d 388, 394 (3d Cir. 1993).

15

Accordingly, there was no error in the District Court's ruling.

## VII.

Finally, we address Chinnery's challenges to his sentence. Chinnery argues that the District Court erred in concluding that his false declarations were "in respect" to a criminal offense within the meaning of the Sentencing Guidelines. Our review of the District Court's interpretation of the Sentencing Guidelines is plenary, but we review factual findings only for clear error. *United States v. Butch*, 256 F.3d 171, 177 (3d Cir. 2001).

Section 2J1.3 of the Sentencing Guidelines governs convictions for perjury, and provides a base offense level of 12. U.S.S.G. § 2J1.3(a). However, the provision states that "[i]f the offense involved perjury . . . in respect to a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above." *Id.* § 2J1.3(c)(1). Section 2X3.1(a) establishes a base level of "6 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 30."

The District Court concluded that Chinnery's perjury pertained to material matters in the Huggins Trial, and were therefore made in respect to a criminal offense under § 2J1.3(c)(1). Adopting the recommendation of the Pre-Sentence Report, the District Court concluded that the mandatory 60 month consecutive term for convictions under 18 U.S.C.

16

§ 924(c)[1] translated to an offense level of 25 using the Guidelines Sentencing Table. The District Court then applied the six-level reduction specified by § 2X3.1, resulting in an adjusted offense level of 19 and an applicable sentencing range of 30-37 months.[2] The District Court sentenced Chinnery to 36 months imprisonment.

Chinnery's sole objection to this calculation is the application of § 2J1.3(c)(1) and the cross-reference to § 2X3.1 for perjury committed "in respect" to a criminal offense. Chinnery argues that his false statements had an insignificant effect on the charges at issue in the Huggins Trial. He reasons that because the statements did not involve the elements of the crimes considered by the jury, they were not intended to assist escaping punishment. As the prosecution's case did not hinge on Chinnery's professional experience or education, Chinnery concludes that his false testimony was not in respect to

---

[1] 18 U.S.C. § 924(c)(1)(A)(i) provides:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime be sentenced to a term of imprisonment of not less than 5 years.

[2] Chinnery argues that the District Court should have used the lowest guideline offense level encompassing a 60 month sentence. The District Court recognized that offense levels 24 and 25 both allowed for a 60 month sentence. However, the District Court noted that had Chinnery been convicted of the underlying offenses at the Huggins Trial, his Guidelines sentence would have included 21 months for the civil rights violation, and a consecutive 60 month term for the firearm violation, resulting in a total sentence of 81 months. The District Court thus reasonably concluded that level 25, with a sentencing range of 57-61 months best represented Chinnery's offense.

a criminal offense.

The Sentencing Guidelines reflect the belief that "perjury should be treated similarly to obstruction of justice." U.S.S.G. § 2J1.3 commentary background. The purpose of the cross-reference within § 2J1.3 is "to treat more severely perjuries that risk an incomplete or an inaccurate . . . trial of a criminal offense." *United States v. Suleiman*, 208 F.3d 32, 39 (2d Cir. 2000). Therefore, the enhancement does not require that the defendant be convicted of, or an accessory to, the underlying crime. *United States v. Blanton*, 281 F.3d 771, 775-76 (8th Cir. 2002); *United States v. Martinez*, 106 F.3d 620, 621-22 (5th Cir. 1997). Instead, courts have held that a perjurious statement "is in respect to a criminal offense where the defendant knew or had reason to know, at the time of his perjury, that his testimony concerned such a criminal offense." *Leon-Reyes*, 177 F.3d at 824; *see also Suleiman*, 208 F.3d at 39.

The District Court made an extensive review of the transcript from the Huggins Trial—over which it also presided—and concluded that Chinnery was aware of the critical role credibility played in the case. The District Court noted that Chinnery's counsel repeatedly emphasized that nothing was more important than Chinnery's credibility, that "he was not contradicted, he was not impeached." Moreover, Chinnery repeatedly emphasized his public stature, and his commitment to "toil[ing] tirelessly in the mine fields of this community." In sum, Chinnery's defense was built on the premise that while the victim was not a believable witness, Chinnery's testimony, based in part on

18

his position, was "firm and convincing."

On these facts, we conclude that Chinnery knew that his testimony concerned the criminal offenses at issue in the Huggins Trial.  By fabricating his professional background and education, his consciously enhanced the credibility of his testimony, and the theory of his defense.  The District Court's determination that Chinnery's testimony materially influenced the jury was thus not clearly erroneous.[3]

## CONCLUSION

For the foregoing reasons, the judgment of the District Court entered on January 27,  2003, will be affirmed.

_____

TO THE CLERK:

Please file the foregoing opinion.

/s/ Robert E. Cowen
United States Circuit Judge

_____

[3] As we agree with the District Court's interpretation of U.S.S.G. § 2J1.3(a) and § 2X3.1 we need not address Chinnery's challenge to the District Court's alternative sentencing calculation.

19