**UNITED STATES of America**

v.

**Osama AWADALLAH, Defendant.**

**No. 01 CR 1026(SAS).**

United States District Court,
S.D. New York.

Nov. 27, 2001.

Robin Baker, Assistant United States Attorney, United States Attorney's Office, Southern District of New York, New York City, for the Government.

Jesse Berman, New York City, for Defendant.

*OPINION AND ORDER*

SCHEINDLIN, District Judge.

Osama Awadallah was arrested in San Diego on September 21, 2001, and was held as a material witness in the investigation of the September 11th terrorist attacks on the World Trade Center and the Pentagon (the "September 11th Attacks"). The government subsequently transported Awadallah to New York to meet with prosecutors. Afterwards, Awadallah testified on two occasions—October 10 and October 15, 2001—before a federal grand jury. On October 18, 2001, the government issued a Complaint charging Awadallah with two counts of making false declarations before a federal grand jury in violation of 18 U.S.C. § 1623. *See* Complaint ¶¶ 1–2. Awadallah was re-arrested on October 21, 2001 on the Complaint and has been held in custody continuously since September 21, 2001. He was indicted on October 31, 2001. Awadallah now seeks bail pending trial.

## I. BACKGROUND

### A. The Government's Allegations

The government alleges the following: Khalid Al–Mihdhar and Nawaf Al–Hazmi were two of the terrorists involved in the September 11th Attacks.[1] *See* Indictment ¶ 3(b). Awadallah knew Al–Hazmi casually for some unspecified period of time because they worked at the same gas station and worshiped at the same mosque. *See id.* ¶ 11 (Count One). In the company of Al–Hazmi, Awadallah met Al–Mihdhar on several occasions. The government claims that Awadallah lied to a federal grand jury

---

**1.** After the Attacks, defendant's name and telephone number were found on a piece of paper in a car which was registered to Nawaf Al–Hazmi and located in the parking lot at Dulles Airport. *See* Indictment ¶ 5. That tele-

phone number was defendant's former telephone number which he had not used for over a year. *See* Bail Hearing before Magistrate Judge Gorenstein ("10/19/01 Tr.") at 13–14.

when he testified that he knew Al–Hazmi by name but not Al–Mihdhar. *See id.* The government also alleges that Awadallah lied to the grand jury when he denied that he wrote the name "Khalid" and certain other words in an exam booklet for his English language course. *See id.* ¶¶ 12–13 (Count Two).

## B. Prior Bail Requests

Bail was denied by Magistrate Judge Ruben Brooks in California on September 25, 2001, and again by Magistrate Judge Gabriel Gorenstein in New York on October 19, 2001.[2] On both occasions, the judges concluded that there was no condition or combination of conditions that could be set that would reasonably assure defendant's return to court.[3]

## C. The Bail Hearing

At defendant's request, this Court held a bail hearing on November 21, 2001. *See generally* November 21, 2001 Transcript of Bail Hearing ("Bail Tr."). The only witness at that hearing was defendant's half-brother, Jamal Awadallah. In addition, the Court received a letter from defendant's teacher, Mimi Pollack, stating in substance that she has known defendant for one year, believes him to be a non-violent person, and supports his application for pre-trial release.

The testimony was followed by a lengthy argument. Defense counsel argued that his client is not a flight risk because he is a

permanent resident who has resided and gone to school in this country since April, 1999. *See* Bail Tr. at 32–33, 43–44. Counsel further argued that defendant has significant family ties in this country, including his oldest half-brother Jamal,[4] who is a United States citizen and has resided in this country with his wife and children for twelve years. *See id.* at 13; 10/19/01 Tr. at 14. Jamal is self-employed, supporting his family by owning and operating an ice-cream truck. *See* Bail Tr. at 24. Awadallah's father is also a United States citizen and several of his half-brothers reside and work in this country as permanent residents. *See id.* at 17, 36; 10/19/01 Tr. at 14. Finally, defense counsel argued that the case against his client is not particularly strong, *see* Bail Tr. at 47, 53, he believes his client will be exonerated and that even if convicted the prison term he faces is not as long as the government projects. *See id.* at 53, 56.

The Pretrial Services Report ("PSR") confirms that defendant has no prior arrests or convictions. *See* PSR at 2. It also reports that defendant has held several jobs in this country, including gas station attendant, security guard, and janitor. He has studied English at Grossmont College in California. *Id.*

The government, in turn, argued that defendant poses a risk of flight because he has was raised in Jordan[5] (having left when he was 18), has a Jordanian passport, much of his family remains in Jordan[6] (including several sisters), and his

2. The transcript of the proceedings before Magistrate Judge Brooks has been reviewed by this Court but remains under seal.

3. This Court has new information that was not before the Magistrate Judges. That information includes the testimony of defendant's half-brother, a review of the complete grand jury testimony, and a letter from defendant's teacher at the college he attended in San Diego.

4. All of defendants's brothers and sisters are half-siblings as they have a different mother and the same father. *See* Bail Tr. at 21.

5. Defendant is a Jordanian citizen. *See* Bail Tr. at 40; 10/19/01 Tr. at 6.

6. Defense counsel noted that some family members are Palestinian refugees, born in Jerusalem, who have no long term ties to Jordan, although they are Jordanian citizens.

birth-mother lives in Egypt.[7]  *See* Bail Tr. at 16, 38.  In addition, the government also argued that defendant's savings of approximately $3,000 provide him with the means to flee.  *See id.* at 72.  Finally, the government argued that if defendant is convicted, he will serve a significant prison term and then face deportation.[8]  *See id.* at 44, 69.  In view of that possibility, which the government believes is strong, the government argued that there is no condition or combination of conditions that can assure defendant's return to court.[9]  *See id.* at 59–60.

On November, 20, 2001, the government submitted a detailed letter in opposition to the bail application.  The letter attached the transcript of the bail argument before Judge Gorenstein, the Complaint, the Indictment and a photocopy of the exam booklet which is the focus of the charges.  The letter also cited *United States v. Suleiman*, 208 F.3d 32 (2d Cir.2000), to support the government's view of the defendant's potential sentence.[10]

At the hearing, defense counsel asked the Court to review defendant's entire grand jury testimony.  The prosecutor submitted the testimony to the Court on November 23, 2001 and I have reviewed it.[11]  Finally, the government submitted a letter dated November 26, 2001 ("Nov. 26 Ltr."), in further opposition to the bail application.  In this letter, the government conceded that if defendant failed to appear that might have a negative impact on the pending visa applications of family members in Jordan, but that it would have no impact on family members who are already U.S. citizens. *See* Nov. 26 Ltr. at 2.

## II.  LEGAL STANDARD

The United States Constitution requires that "[e]xcessive bail shall not be required."  U.S. CONST. amend.  VIII. The release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. This federal statute requires that the court order the pretrial release of a defendant on a bond, "unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  If the court determines that release on an appearance bond is not sufficient, the court shall order pretrial release "subject to the least restrictive further condition, or combination of conditions, that [the court] determines will rea-

---

*See* Bail Tr. at 40–41.  All of defendant's immediate family members remaining in Jordan have visa applications pending and wish to move to the United States to join their parents and brothers.  *See id.* at 41–42.

7.  Defendant has no relationship with his birth-mother whom he has not seen since he was an infant.  He was raised by his father's wife, the mother of his half-siblings.  *See* PSR at 2; 10/19/01 Tr. at 6.

8.  The government argued that if convicted of both counts of perjury, defendant faces a maximum sentence of ten years imprisonment and a Guideline range beginning at 97 months.  *See* Government Letter of November 20, 2001 at 3–4.  Defense counsel's response was that if the alleged false declarations were not made "in respect to a criminal offense," then the Guideline range would begin at ten months.  *See generally* Bail Tr. at 57.

9.  The government only argues risk of flight; it does not argue that the defendant poses a danger to the community.  *See* Bail Tr. at 70.

10.  At the oral argument, defense counsel distinguished *Suleiman* on several grounds, including the fact that in *Suleiman*, the defendant's false answers to material questions obstructed an inquiry concerning a criminal matter and that in *Suleiman* the defendant never corrected his testimony, as the defendant did here.  *See* Bail Tr. at 57.

11.  The grand jury transcript remains under seal.

sonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(c)(1)(B). Finally, "[i]f after a [detention] hearing . . . the [court] finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, [the court] shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

In deciding whether there are conditions of release that will reasonably assure the appearance of the person and the safety of the community, the court should consider the following factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or

completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). Although in certain cases a "rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(e),[12] false testimony before a grand jury is not such a case. Accordingly, no presumption in favor of detention exists here. Finally, the last section of the bail statute states: "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

▮ When considering an application for pretrial detention, the court must first determine whether the government has established "by a preponderance of the evidence . . . that the defendant . . . presents a risk of flight." *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir.1988). If the government satisfies this burden, the court must then decide "whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir.1987).[13] A court should always "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *Id.* at 195 (quoting S.Rep. No. 98–225 at 7, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United*

---

**12.** The rebuttable presumption arises in narcotics cases requiring a maximum prison term of more than ten years; in crimes involving the use of a weapon in furtherance of a crime involving violence or narcotics; in conspiracies to kill, injure or maim a person outside the United States; and in crimes involving acts of terrorism. 18 U.S.C. § 3142(e).

**13.** In construing the words "reasonable assurance," one court has held that "[t]he law requires reasonable assurance but does not demand absolute certainty, which would be only a disguised way of *compelling* commitment in advance of judgment." *United States v. Alston*, 420 F.2d 176, 178 (D.C.Cir.1969) (emphasis added).

*States v. Mercedes,* 254 F.3d 433, 436 (2d Cir.2001) (even in a presumption case the government bears the ultimate burden of proving risk of flight by a preponderance of the evidence).

## III. DISCUSSION

I turn now to a brief review of the relevant factors.

### 1. *Nature and Circumstances of the Offense*

Defendant is charged with making false declarations before a grand jury after he agreed to be questioned by prosecutors in both their offices and again in the grand jury. No one compelled Awadallah to testify, he did not assert any privilege, and he did not seek immunity. *See* 10/19/01 Tr. at 10–11. Of particular importance is the fact that defendant recanted his testimony shortly after it was given. Obviously, making false declarations is not a crime of violence and does not involve a narcotic drug. "This militates in favor of pretrial release." *United States v. Khashoggi,* 717 F.Supp. 1048, 1051 (S.D.N.Y.1989). If convicted of making false declarations, defendant may face a significant prison term and subsequent deportation.[14]

### 2. *The Weight of the Evidence*

My review of the grand jury testimony has convinced me that the evidence against Awadallah is not particularly strong. De-

fendant is charged with making two false material declarations, but he recanted that testimony at a subsequent grand jury appearance. If a person who testifies falsely admits that such testimony was false, "such admission shall bar prosecution ... if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed." 18 U.S.C. § 1623(d). The government argued that, here, defendant recanted only after it had become manifest that his false declarations had been or would be exposed. *See* Bail Tr. at 62, 64.[15] However, my review of the grand jury testimony reveals that the evidence is not particularly strong and, at best, is a neutral factor.

### 3. *History and Characteristics of Defendant*

A review of defendant's history and characteristics reveals the following: He is twenty-one years old and single, he has significant family ties in the San Diego community,[16] he has a verified employment record, he is a student at Grossmont College, he entered the country legally, he has been a permanent resident for three years, and he has no criminal record and no record of drug or alcohol abuse. Defendant intends to become a U.S. citizen. While defendant still has family in Jordan, much of the family lives here and the

---

**14.** I recognize that this grand jury was investigating one of the most serious crimes in this country's history—the September 11th Attacks. I have considered the nature of the investigation when evaluating the circumstances of the offense charged.

**15.** Defense counsel is moving to bar this prosecution based on defendant's recantation. The government is opposing the motion, arguing that defendant recanted only after it had become manifest that his false testimony would be exposed. The motion will be fully

briefed on December 24, 2001. Even if the recantation does not bar the prosecution, it may still be considered by the jury when assessing defendant's intent.

**16.** The government concedes that it would oppose the bail even if this prosecution were pending in San Diego rather than New York. *See* Bail Tr. at 67. Accordingly, when I review ties to the community, I am referring to the United States generally and San Diego in particular.

remainder are seeking to move to the United States. A flight by defendant would endanger their chances of coming to this country. On the other side of the ledger, defendant grew up in Jordan, has a Jordanian passport, and has many family members who reside in Jordan.

### 4. General Considerations

It must be remembered that this defendant is charged with making false declarations—not with terrorism, or aiding and abetting terrorism, or conspiring with terrorists. As revealed by the Indictment and the Complaint, this defendant casually knew two of the terrorists involved in the September 11 attacks. These men had resided, for a short period of time, in defendant's community in San Diego. At no point has the government alleged or argued that Awadallah was involved with their illegal activities or had any part in the planning or preparation of their attacks or any advance knowledge of those attacks.

### 5. Conclusion Based on a Review of all Factors

▉ Based on the totality of these factors, I conclude that defendant is entitled to release on bail subject to certain conditions. In most cases in which a defendant faces a prison term upon conviction, there is reason to conclude that there is some risk of flight. This case is no exception. The government has proven that defendant has significant ties to Jordan, and that he faces a significant prison term and deportation if convicted. Based on this showing, the government has met its burden of establishing *a risk* of flight.

Nonetheless, the government failed to meet its burden of establishing that there are no conditions or combination of conditions that can be set that would "reasonably assure" this defendant's appearance

at trial. *See Shakur,* 817 F.2d at 195 ("The burden of proof is on the government to prove the absence of such conditions by a preponderance of the evidence."). Defendant has strong ties to this community, where he has lived, worked and studied for the past three years. He is a permanent resident of this country and intends to become a U.S. citizen. He has three half-brothers and parents who reside here, all of whom are prepared to support his bail application. He also has strong ties to his community through his employment, his school and the mosque where he worships. He has never been in trouble. His teacher speaks highly of him and trusts that he is not a risk of flight.

Defendant also has a strong incentive to remain in this country. He has a defensible case and he wishes to become a U.S. citizen. In addition, if his family signs a bond and posts bail, they will be risking their livelihood, thereby providing a further incentive for defendant to appear at trial. For these reasons, I conclude that the following conditions will reasonably assure defendant's appearance for trial.

## IV. CONDITIONS OF RELEASE

Under the circumstances, I conclude that the following conditions will reasonably assure the appearance of the defendant as the statute requires. Accordingly, defendant shall be released under the following conditions:

(1) The posting of a $500,000 bond to be signed by defendant, his half-brothers in San Diego and his father;

(2) Ten percent cash collateral on the bond to be posted by family members and/or members of the community who have ties to the defendant. Title to Jamal's ice-cream truck shall also be posted;

(3) Defendant must reside with his brother Jamal until the trial of this case;

(4) Defendant must surrender any and all passports or other travel documents;

(5) Defendant must remain in San Diego, except to meet with his attorney in New York, for trial preparation and trial;

(6) Defendant must wear an electronic bracelet;

(7) Defendant must report daily, in person, to a pretrial services officer in San Diego; and

(8) Defendant must post, as security on the bond, all balances he maintains in any checking and/or savings accounts.

SO ORDERED.