**UNITED STATES of America Plaintiff,**

**v.**

**BENEVOLENCE INTERNATIONAL FOUNDATION, INC., and Enaam M. Arnaout, a/k/a "Abu Mahmoud," a/k/a "Abdel Samia" Defendants.**

**No. 02 CR 414.**

United States District Court, N.D. Illinois, Eastern Division.

May 28, 2002.

---

Hon. Patrick J. Fitzgerald, United States Attorney, By Mr. Patrick J. Fitzgerald, Mr. John C. Kocoras, Chicago, IL, for the Plaintiff.

Gessler, Hughes, Socol, Piers, Resnick & Dym, By Mr. Matthew J. Piers, Ms. Mary M. Rowland, Chicago, IL, for Benevolence Int'l.

Stephen Levy & Associates, By Mr. Stephen Levy, Chicago, IL, Joseph J. Duffy, William Paul Ziegelmueller, Stetler & Duffy, Ltd., Chicago, IL, for Enaam Arnaout.

Mr. Joseph Rickhoff, Official Court Reporter, Chicago, IL, for Court Reporter.

## *RULING*

LEVIN, United States Magistrate Judge.

The issue before the Court is whether the Defendant, Mr. Arnaout, should be detained pending trial or whether he should be placed on bond, with the type of conditions proposed by the Defense.

The salient facts are contained in the ruling of the Court at the probable cause hearing, which ruling is incorporated herein by reference and a copy of the transcript of which is attached hereto.

The Government's principal argument is that the Defendant is a risk of flight, which, under uniform case law, the Government must establish by a preponderance of the evidence.

The Court has taken into account the available information and arguments on both sides concerning the factors delineated at 18 U.S.C. § 3142(g).

The Court finds, however, that there are several overriding factors in this case. In considering the risks of flight herein, implicitly, the Court must assess (A) the Defendant's mental state (including his motivation to flee) and (B) whether the Defendant has the physical means to flee.

As to mental state: The reality is that this is not a simple perjury case. It is a perjury charge in the context of a terrorism financing investigation. The Defendant knows that there is a substantial and

determined ongoing federal investigation to link him to and/or accuse him of more serious terrorism charges. In these circumstances, and given the post 9/11 climate in this country, regardless of Defendant's actual guilt or innocence of all this, the natural human tendency has to be for Defendant to apprehensively feel he's in a difficult and opprobrious situation, from which flows an incentive and risk for flight. In addition, the evidence proffered by the Government was that even prior to Defendant being formally charged herein, in March of this year, Defendant discussed with another individual whether he should leave for Saudi Arabia (where Defendant's Mother and siblings live) and not return to the United States. A further proffer was that last month Defendant advised the Benevolence International Foundation representative in Pakistan to leave and relocate to Afghanistan with all the money, to avoid the Pakistani intelligence authorities who were looking for that Pakistan representative.

As to physical means: The Defendant has an extensive international network of contacts, which is not available to the average person. Besides a sister organization in Canada and an office in New Jersey, the Benevolence International Foundation ("BIF") has ten offices overseas; namely, in Pakistan, Bosnia, Azerbaijan, Tajikistan, Yemen, Bangladesh, Turkey, Dagestan, Soviet Georgia, China and Ingueshita (moved from Chechnya). BIF also has charitable projects in a number of these countries plus Afghanistan. As stated, Defendant has family in Saudi Arabia and he was born and raised in Syria. Other documents show Defendant contacts with the Sudan and Defendant used to reside in Florida. Parenthetically, a Government proffer was that, in 1993, Defendant escaped from a Croatian jail.

The Court thus perceives that Defendant has the requisite mental state and the readily available physical means to create a risk of flight.

It also bears noting that electronic monitoring can't stop a person from fleeing. It can be noted, too, that all the property proposed to be posted as bond security is either owned by BIF or members of the community. There thus would be no financial harm incurred by Defendant's family if he flees, which therefore creates significantly less incentive for the Defendant to stay than if Defendant or his family was to post substantial security.

The Defendant cites *United States v. Awadallah,* 173 F.Supp.2d 186 (S.D.N.Y. 2001), but that case is factually distinguishable from the present case. For example, the Defendant there was charged with lying to a grand jury investigating terrorism, but Defendant recanted that testimony at a following grand jury appearance. This recantation (a unique factor not present herein) was considered by the Court to be an important factor in its considering the detention issue before it. Further, *inter alia,* unlike here, the *Awadallah* Court explicitly noted that the Government had never alleged or argued that the Defendant was involved with terrorist activities.

In view of the foregoing, considering the totality of the factors and circumstances, the Court determines that the Government has met its burden that the Defendant is a risk of flight. And the Court finds that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required. Therefore, the Defendant is ordered detained pending trial.[1]

---

1. Pretrial Services has recommended detention of the Defendant, based on a risk of flight and as a danger to the community.

In light of the Court's ruling, the Court deems it unnecessary to consider whether the Government has established by clear and convincing evidence that the Defendant is a danger to the community.

### Attachment

TRANSCRIPT OF PROCEEDINGS— PROBABLE CAUSE HEARING BEFORE THE HONORABLE IAN H. LEVIN—RULING

My ruling is as follows as to this matter:

■ In preface, it bears noting that this is not a trial and that the nature of the proceeding presently before the Court is such that the defendants do not mount a defense.

Rather, and essentially, the purpose of this preliminary hearing is to determine from the evidence presented by the United States Attorney's Office if there is probable cause to believe that the offense of perjury as charged in the criminal complaint here has been committed by the defendants.

Specifically, the complaint charge herein is that the defendants knowingly submitted false material declarations under oath in a federal district court proceeding here in Chicago and in violation of Title 18, United States Code, Section 1623.

As is pertinent here, the portion of the sworn declarations signed by defendant Arnaout on behalf of the defendant Benevolence International Foundation—hereafter called BIF—in issue states that Benevolence International Foundation, "has never provided aid or support to people or organizations known to be engaged in violence, terrorist activities or military operations of any nature."

At the hearing before the Court, the United States Attorney's Office presented evidence that in 1995, relative to military operations and violence, Benevolence International Foundation representatives delivered an X-ray machine and $3225 to Chechnyan guerillas or freedom fighters for military operations in Azerbaijan.

The U.S. Attorney's Office also presented evidence that during or after February, 2000, a website dedicated to the cause of the Chechen freedom fighters in the military fight or jihad in Chechnya posted donation links on the website for Benevolence International Foundation (and only one other charity) as a trustworthy aid organization to donate money to the Chechnyan mujahideen (holy warriors) or freedom fighters for the military operations in Chechnya.

The U.S. Attorney's Office presented related evidence that during or around the same February, 2000, period, BIF wired $685,000 to its account in that vicinity or region.

When the described website and $685,000 in money transfers are compared as to time and considered with other circumstantial evidence presented by the government, for purposes of this probable cause hearing, a reasonable inference is that the subject $685,000 or some significant portion thereof went for military operations and violence in Chechnya.

Regarding the issue of materiality raised by Mr. Piers in the closing argument, the Court respectfully finds that the declaration at issue is "material." The civil district court suit filed by BIF is wholly premised on the premise that BIF is solely a charitable organization. The declaration by BIF therein that it has never provided aid or support to any people or organization known to be engaged in military operations of any nature or violence is, therefore, clearly and inherently a material declaration in that civil suit.

In summary, in view of the described evidence presented by the government regarding the X-ray machine, $3500 in cash

for use by the Chechen mujahideen (or guerillas or freedom fighters) in their war activities in Chechnya, plus the evidence surrounding the $685,000 in money transfers discussed, the Court finds that probable cause exists that the defendants knowingly submitted false material declarations under oath that BIF has never provided aid or support to people or organizations known to be engaged in, inter alia, "violence" or "military operations of any nature."

Accordingly, the Court finds from the evidence that there is probable cause to believe that the offense charged in the complaint has been committed and that the defendants have committed such offense. The defendants, thus, are held to answer for further proceedings in the district court.

That is the finding of the Court on that issue.