**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

DAVID RUCKER LEIFSON,

     Defendant-Appellant.

No. 08-4103

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:06-CR-0313-TC)**

---

Submitted on the briefs:

Edward K. Brass, Salt Lake City, Utah, for Defendant-Appellant.

Brett L. Tolman, United States Attorney; Diana Hagen, Assistant United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **BRISCOE, McKAY,** and **HARTZ**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Defendant-Appellant David Rucker Leifson appeals his sentence of 48 months' imprisonment, which he received after pleading guilty to one count of perjury in violation of 18 U.S.C. § 1623(a). Leifson contends that the district

court erred in calculating his sentence by applying the accessory-after-the-fact cross reference guideline, U.S.S.G. § 2X3.1, because his false statement was not "in respect to a criminal offense" within the meaning of U.S.S.G. § 2J1.3(c)(1). Alternatively, he argues that the district court should have used kidnaping, U.S.S.G. § 2A4.1 (base offense level 32) as the underlying offense, rather than second degree murder, U.S.S.G. § 2A1.2 (base offense level 38).  We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.[1]

I

Kiplyn Davis was last seen in Spanish Fork, Utah, on May 2, 1995, when she was fifteen years old.  As part of the Federal Bureau of Investigation ("FBI") investigation into Davis's disappearance, many people were interviewed, including Leifson and Timmy Brent Olsen, see United States v. Olsen, 519 F.3d 1096 (10th Cir. 2008).  Olsen made statements to others implicating Leifson in Davis's disappearance and suggesting that Leifson murdered Davis; Leifson confronted Olsen about the statements and threatened to kill Olsen.  Olsen started to write a statement for the FBI possibly implicating Leifson, but he stopped after a few sentences, crumpled up the paper, threw it away, and then refused to speak further with the authorities.  The initial investigation failed to uncover what

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is, therefore, submitted without oral argument.

2

happened to Davis.

The investigation was reopened in 2003 after the disappearance of another Utah teenager, Elizabeth Smart. As part of the reopened investigation, Leifson testified before the grand jury. During Leifson's grand jury testimony, he gave false statements concerning whether he recalled confronting and threatening Olsen during the time of the initial investigation; Leifson testified that he did not recall confronting and threatening Olsen when, in fact, he did remember doing so.

After the grand jury hearing, Leifson was indicted for six counts of perjury, all in violation of 18 U.S.C. § 1623(a). Leifson pleaded guilty to Count III of his indictment which stated:

> On or about December 1, 2004, in the Central Division of the District of Utah, David Rucker Leifson, the defendant herein, while under oath in a proceeding before the Grand Jury of the United States did knowingly make false material declaration(s) as follows (underlined portions alleged as false):

> QUESTION:    But do you see my point here? I mean, you can get so angry about this situation where you—you know, you were driving and you didn't even know what was going on, but yet when Tim Olsen accuses you of taking Kiplyn, taking her over this hill and coming back alone, you don't do anything about it?

> ANSWER:    You know, all I can tell you is I don't remember doing that. I don't remember getting so mad and yelling at him.

> QUESTION:    Because - you know, you have a real distinct memory about certain things, maybe even trivial things. But something major like that, you just have no knowledge of. Can you explain that?

3

ANSWER: You know what, it was kind of a wild lifestyle at the time.

QUESTION: Well, it was a different lifestyle. That doesn't answer my question. I mean, here's a significant act in your life that you can distinctly remember. But yet, there is a similar action that occurs with your good friend, yet you can't remember anything regarding that, other than, "I may have talked to him about it. I would have talked to him about it, but I don't remember any details about it"?

ANSWER: I don't remember. That's all I can tell you.

QUESTION: How is that possible, Mr. Leifson?

ANSWER: You know what, I don't know how that's possible. But that's the way it is. I can't fabricate something and make you believe it. All I can tell you is what I know.

QUESTION: Well, you haven't told me anything that you know. You say you can't remember.

ANSWER: I can't.

QUESTION: But you remember other details?

ANSWER: I'm trying to give you everything I can.

QUESTION: And you can't recall being so angry with Tim about these lies he's spreading around town to police officers? You can't remember getting so angry at him that you went and confronted him about it?

ANSWER: No, I can't.

QUESTION: On at least two separate occasions?

ANSWER: No, I can't.

QUESTION: In front of two different people?

4

ANSWER:        I can't.

December 1, 2004 Grand Jury Testimony, Page 90, Line 17 - Page 92, Line 7.

        In truth in fact, as Leifson well knew when he gave this testimony, it was false in that:

1.      U[nidentified] P[erson] # 4 was present when Leifson confronted Timmy Olsen and Leifson was well aware about the content and nature of the confrontation.

2.      U.P. # 22 was present when Leifson confronted Timmy Olsen and Leifson was well aware about the content and nature of the confrontation.

3.      Leifson later admitted the facts of the confrontation with Timmy Olsen and U.P. # 22 in a tape recorded conversation to U.P. # 23, and was, therefore, well aware of the confrontation and the content and nature thereof.

        All in violation of 18 U.S.C. § 1623(a).

ROA, Vol. I, Doc. 1 (Indictment), at 5-6.

        The guideline for perjury provides a base offense level of 14. See U.S.S.G. § 2J1.3(a). The presentence report ("PSR") recommended applying the cross reference guideline for perjury, which states that "if the offense involved perjury . . . in respect to a criminal offense, apply [U.S.S.G.] § 2X3.1 (Accessory After the Fact) in respect to that criminal offense . . . ." Id. § 2J1.3(c)(1). The accessory-after-the-fact guideline provides for a base offense level "6 levels lower than the offense level for the underlying offense," id. § 2X3.1(a)(1), but "not more than level 30." Id. § 2X3.1(a)(3)(A).

5

The PSR determined that Leifson's perjury was "in respect to" second degree murder, which has a base offense level of 38. See id. § 2A1.2(a). Therefore, the PSR calculated an adjusted offense level of 30, which is the highest level allowed under the cross reference guideline. After subtracting 3 levels for acceptance of responsibility, the PSR calculated a total offense level of 27. With a criminal history category of I, Leifson's calculated guideline range was 70 to 87 months' imprisonment. However, perjury has a statutory maximum sentence of 60 months' imprisonment, making the statutory maximum sentence the recommended guideline sentence.

FBI Special Agent Michael Anderson testified at sentencing that if Leifson had been truthful at the grand jury investigation, the FBI could have "conducted further investigation, corroborated additional witness testimony that was developed later on, asked further questions of Mr. Olsen [and] Mr. Leifson, and pursued that investigative angle out to a logical conclusion." ROA, Vol. II, at 13. From this testimony, which the district court acknowledged was speculation, the district court concluded that Leifson's perjury was "clearly intertwined with the investigation of what happened." Id. at 35; see also id. ("I don't think that we can call upon Special Agent Anderson or the others to say exactly what [Anderson] would have done, because he got a false answer. He didn't get the right information. Had he gotten the right information with details, then it certainly would have been an important part of this investigation.").

6

The district court adopted the PSR's sentencing guidelines calculations, including the application of the accessory-after-the-fact cross reference guideline to second degree murder. However, the court determined that a below-guideline sentence was reasonable. Leifson was sentenced to 48 months' imprisonment, 36 months of supervised release, and a special assessment of $100.

II

We review the district court's interpretation of the sentencing guidelines de novo. United States v. Dalton, 409 F.3d 1247, 1251 (10th Cir. 2005). We review any factual findings for clear error. United States v. Parker, 553 F.3d 1309, 1321 (10th Cir. 2009). "Whether perjury was 'in respect to a criminal offense' is an issue of fact." United States v. Blanton, 281 F.3d 771, 775 (8th Cir. 2002).[2]

---

[2] Leifson mentions that a standard of proof higher than the preponderance of the evidence standard may be required in some cases. However, he does not argue that a higher standard should apply in his case. He merely states in his brief:

> In Olsen the Court noted the standard of proof required to apply the Accessory After the Fact cross reference is a preponderance of the evidence standard in order to meet due process concerns, however, the Court further noted that "in some extraordinary or dramatic case, due process might require a higher standard of proof." Olsen[, 519 F.3d] at 1105 (citing United States v. Espinoza, 67 F[]. App'x 555, 561 (10th Cir. 2003) (unpublished) (characterizing United States v. Mendez-Zamora, 296 F.3d 1013 (10th Cir. 2002), as "apparently leaving open the possibility that a more dramatic increase in sentence might warrant a heavier burden of proof.")).

(continued...)

A.     Application of the accessory-after-the-fact cross reference guideline

Leifson argues that the district court erred by applying U.S.S.G. § 2J1.3(c), which instructs the sentencing court to apply the accessory-after-the-fact cross reference guideline, U.S.S.G. § 2X3.1, if the perjury was "in respect to" a criminal offense. Leifson contends that his grand jury perjury was not in respect to a criminal offense because his false testimony did not "obstruct[] the investigation of the criminal offense." Aplt. Br. at 13.

We interpret the phrase, "in respect to," in U.S.S.G. § 2J1.3(c) according to its plain meaning. Olsen, 519 F.3d at 1105. The defendant does not need to commit nor be charged with the underlying offense for the cross reference guideline to apply. Id. Perjury is made "in respect to" a criminal offense when it is "related to the criminal offense in a very entwined and enmeshed way." United States v. Renteria, 138 F.3d 1328, 1334 (10th Cir. 1998) (internal quotations and citation omitted). However, the false statement need not refer specifically to the underlying offense:

> To perform its broad investigative function, the grand jury must be able to ask questions intended to probe witnesses for information about knowledge or conduct relevant to the criminal offense being investigated. Such questions need not always specifically refer to the underlying offense and would sometimes be ineffective if they did.

---

[2](...continued)
Aplt. Br. at 10. As Leifson does not actually argue that a higher standard of proof was required at sentencing or that his is an "extraordinary or dramatic case," we apply the preponderance of the evidence standard of proof.

> A witness, punishable for any false answer, deserves enhanced punishment for a false answer that obstructs an inquiry concerning a criminal offense, and a witness, informed of the subject of such an inquiry, may not avoid the enhancement just because the question to which he gave a false answer did not alert him to the precise link between the question and the offense under inquiry.

United States v. Suleiman, 208 F.3d 32, 40 (2d Cir. 2000). Perjury is in respect to a criminal offense "so long as the defendant knew or had reason to know, at the time of his perjury, that his testimony concerned such a criminal offense . . . ." United States v. Rude, 88 F.3d 1538, 1543 (9th Cir. 1996).

Under 18 U.S.C. § 1623(a), perjury, to which Leifson pleaded guilty, has the following elements: "(1) the defendant made a declaration under oath before a grand jury; (2) such declaration was false; (3) the defendant knew the declaration was false, and (4) the false declaration was material to the grand jury's inquiry." United States v. Clifton, 406 F.3d 1173, 1177 (10th Cir. 2005). To be material, the false declaration must have "a natural tendency to influence, or be capable of influencing, the decision required to be made." United States v. Durham, 139 F.3d 1325, 1329 (10th Cir. 1998) (internal quotations, brackets, and ellipses omitted).

Leifson argues that the cross reference guideline does not apply unless there is "proof that the perjury obstructed the investigation of the [underlying] criminal offense." Aplt. Br. at 13. Leifson contends that his perjury did not obstruct the investigation because "[i]t would have made no material difference to

9

the grand jury's investigation if Leifson had frankly discussed his emotional upset pertaining to Olsen and the accusations he made against Leifson." Id. at 14 (emphasis added). He further states, "Leifson's perjury did not pertain to a crucial element of an investigation . . . ." Id. at 15 (emphasis added). Leifson's argument confuses the materiality element of perjury with the cross reference guideline requirement that the perjury be in respect to a criminal offense.

Leifson filed a signed statement prior to his guilty plea which stated that he understood the elements of perjury and intended to plead guilty. Additionally, Leifson stated, "I knowingly gave false material testimony, while under oath, before the Grand Jury of the United States District Court, District of Utah when questioned about statements made regarding the disappearance of Kiplyn Davis." Supp. Vol. II, at 14 (Doc. 29). Leifson cannot now argue that his false statements were not material to the grand jury investigation into Davis's disappearance and presumed death, or that he did not know that his false statements were material.

In support of his argument, Leifson relies on the following language from Olsen: "[T]he text of the perjury guideline, combined with the cross reference, requires perjury which obstructs an investigation into a criminal offense to be punished more severely than other sorts of perjury . . . ." 519 F.3d at 1106 (emphasis added). However, our opinion in Olsen simply refers to the combination of the perjury guideline (which requires the perjury to be material) and the cross-reference guideline (which requires the perjury to be in respect to a

10

criminal offense). In other words, perjury that is material to the investigation of a criminal offense will be punished more severely than other sorts of perjury by operation of the cross reference guideline.

However, it is not enough that the defendant make a material false statement and that the sentencing court conclude that the grand jury investigation pertained to murder. The defendant must have some knowledge of the subject matter of the grand jury investigation in order for the perjury to be in respect to a criminal offense such that the accessory-after-the-fact cross reference guideline applies. See Blanton, 281 F.3d at 776 (holding that a witness must be "put on notice . . . of the nature of the grand jury's inquiry either prior to or during her grand jury testimony" (emphasis added)); Suleiman, 208 F.3d at 39 ("[A]s long as the witness has been alerted to the fact that the grand jury is investigating a criminal offense, false answers to material questions will almost always merit enhanced punishment." (emphasis added)); Rude, 88 F.3d at 1543 (explaining that perjury is in respect to a criminal offense "so long as the defendant knew or had reason to know, at the time of his perjury, that his testimony concerned such a criminal offense" (emphasis added)).

Here, Leifson knew that the grand jury was investigating Davis's disappearance and whether she was murdered. Leifson was a target of the grand jury investigation and was served with a target letter. He was told in the first minutes of his grand jury testimony that the purpose of the grand jury was "to

11

investigate, and where probable cause is found, to return indictments of violations of federal criminal law." ROA, Vol. I, at 2 (Grand Jury Tr.). While gathering biographical information, the focus of the questioning was about his years in high school, near the time of Davis's disappearance. Davis's name was mentioned for the first time when Leifson was asked if he knew Davis, which was before the grand jury took a break for lunch. Id. at 33. After the lunch break, he was asked about Davis's "disappearance," id. at 36, and "death." Id. at 38. Leifson was asked about confronting Olsen for "telling the authorities that [he was] involved with the disappearance or the murder of a 15 year old girl . . . ." Id. at 40. Leifson admitted that he stopped talking to Olsen "[p]robably because of the whole Kiplyn Davis issue." Id. at 89. And only then did Leifson utter the false statements that give rise to Count III of Leifson's indictment. Id. at 90-92.

The district court did not err by concluding that Leifson's perjury was in respect to a criminal offense and applying the accessory-after-the-fact cross reference guideline.

B.     Applicable underlying criminal offense

Because we affirm the district court's application of the accessory-after-the-fact cross reference guideline at sentencing, we address Leifson's alternative argument that the underlying offense should be kidnaping, and not second degree murder. If kidnaping were the underlying criminal offense, then Leifson's total

12

offense level would be 23,[3] and his corresponding guideline range would be 46 to 57 months' imprisonment.

Leifson raises three arguments in support of this issue: (1) he was not informed prior to testifying that the grand jury was investigating a murder; (2) the FBI had jurisdiction to investigate only kidnaping, not murder; and (3) Olsen's grand jury testimony, while clearly related to a murder investigation, is unlike Leifson's testimony, which was not related to a murder investigation.

"'Whether the underlying offense involved in perjury was 'in respect to a criminal offense' is a finding of fact to be resolved by the district court during sentencing.'" United States v. Dickerson, 114 F.3d 464, 467 (4th Cir. 1997) (quoting United States v. Colbert, 977 F.2d 203, 207 (6th Cir. 1992)); see also United States v. Arias, 253 F.3d 453, 455 (9th Cir. 2001) (in an obstruction case, concluding that the determination of the cross reference offense with respect to which the obstruction occurred is "a factual one that the sentencing judge will resolve by a preponderance of the evidence"). For the reasons that follow, we conclude that the district court did not clearly err in determining that second degree murder was the criminal offense to which the accessory-after-the-fact cross reference guideline should be applied.

---

[3] Kidnaping has an offense level of 32. U.S.S.G. § 2A4.1. With a 6-level reduction by application of the accessory-after-the-fact cross reference guideline, id. § 2X3.1(a)(1), and a 3-level reduction for acceptance of responsibility, id. § 3E1.1, the total offense level is 23.

1.      Notice to Leifson that the grand jury was investigating murder

Leifson argues that the underlying offense to his perjury cannot be second degree murder because he "was never put on notice prior to or after his swearing in during his grand jury testimony that the nature and subject of the investigation related to matters concerning a second-degree murder." Aplt. Br. at 26. Leifson cites Suleiman, 208 F.3d at 32, and Blanton, 281 F.3d at 771, to support this argument.

In Suleiman, it was explained to the defendant prior to his grand jury testimony that the grand jury was investigating violations of 18 U.S.C. §§ 371 and 844, and that these statutes covered conspiracy and the bombing of buildings used in interstate commerce. 208 F.3d at 35. The defendant in Suleiman argued that his perjury was not in respect to any bombing because he was never directly questioned about his involvement in the bombing. Id. at 36. The Second Circuit concluded that the district court had erred in presuming that "perjury can be 'in respect to' a criminal offense only where the questions asked and the false statements given in response specifically refer to a criminal offense." Id. at 39. The Second Circuit explained that

> "[a] witness, punishable for any false answer, deserves enhanced punishment for a false answer that obstructs an inquiry concerning a criminal offense, and a witness, informed of the subject of such an inquiry, may not avoid the enhancement just because the question to which he gave a false answer did not alert him to the precise link between the question and the offense under inquiry."

14

Id. at 40.

In Blanton, it was explained prior to and during the defendant's grand jury testimony that the grand jury was investigating a series of bank robberies, and was interested specifically in a white Monte Carlo getaway car. 281 F.3d at 774. The jury found the defendant guilty of perjury for making false statements about a white car stored in her garage. The Eighth Circuit held "that a witness is put on notice when an A[ssistant U.S. Attorney ("AUSA")] informs that witness of the nature of the grand jury's inquiry either prior to or during her grand jury testimony." Id. at 776.

Leifson contends that, unlike the defendants in Suleiman and Blanton, he was not put on notice as to the nature or subject of the grand jury's investigation into Davis's disappearance and presumed death. Aplt. Br. at 22, 25. Davis's disappearance and death were not mentioned during Leifson's grand jury testimony until after over an hour of questioning. Additionally, Leifson complains that the AUSA never "formally" told him that Davis's disappearance and death were the subject of the grand jury investigation. Id. at 24.

However, as discussed above, Leifson was questioned repeatedly about Davis's "disappearance," "murder," and "death" prior to his uttering perjurious statements. He was, therefore, on notice that the grand jury was conducting a murder investigation.

Leifson also argues that he "had no reason to know that the grand jury was

15

investigating a second-degree murder" because he "never heard a confession from Olsen regarding Davis's murder," id. at 25, and no one had been indicted on any charges for the second degree murder of Davis at the time of Leifson's grand jury testimony. Id. at 26. Although Leifson cites to United States v. Flemmi, 402 F.3d 79 (1st Cir. 2005), for support, the holding in Flemmi does not require the defendant to hear a confession, have knowledge of an indictment, or to have experienced any other specific circumstances in order for his perjurious statement to be in respect to a specific criminal offense, such as murder. The First Circuit merely applied the law to the facts before it. See 402 F.3d at 96-97 & n.28 (citing Ninth and Second Circuit cases for the proposition that the defendant must know, have reason to know, or be aware that the grand jury is investigating the underlying criminal offense for the accessory-after-the-fact cross reference guideline to apply). The First Circuit determined that the defendant in Flemmi knew or had reason to know that his perjurious testimony concerned murder because the defendant had recently heard a confession to the murder and several people had been indicted for the murder at the time of his grand jury testimony. Therefore, Flemmi does not support Leifson's argument that a defendant must hear a confession to murder or have knowledge of an indictment for murder in order for murder to be the appropriate underlying offense. The First Circuit's unremarkable holding in Flemmi is merely that the witness must have some knowledge that the grand jury is investigating the underlying offense, and not, as

16

Leifson argues, that the witness must have experienced the specific circumstance of hearing a confession or having knowledge of a criminal indictment. Leifson had notice that the grand jury was investigating the possibility that Davis was murdered, and the district court did not clearly err in determining that second degree murder was the underlying offense.

2.      The FBI's jurisdiction

Leifson also argues that the underlying offense should be limited to kidnaping because the FBI's jurisdiction was limited to kidnaping. Leifson cites no authority to support his argument that the underlying offense is limited by the FBI's jurisdiction.

To the extent Leifson suggests that he had no notice that the grand jury was investigating murder because he knew that the FBI lacked jurisdiction to investigate murder, we have addressed this argument above. The federal kidnaping statute includes the possibility that the kidnaping might result in death. See 18 U.S.C. § 1201(a) ("Whoever unlawfully . . . kidnaps . . . and, if the death of any person results, shall be punished by death or life imprisonment"). Further, an individual convicted of federal kidnaping that results in death can receive the same punishment under the sentencing guidelines as would be imposed for murder. U.S.S.G. § 2A4.1(c) ("If the victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1

17

(First Degree Murder).").  Even if the FBI's jurisdiction somehow only put Leifson on notice that the grand jury investigation concerned Davis's kidnaping, Leifson was necessarily on notice of the possibility of a higher sentence if that kidnaping resulted in death.

3.      Comparison to Olsen

Finally, Leifson acknowledges that the perjurious statements made by Olsen to the same grand jury were related to murder, but he argues that his case is distinguishable.  See Aplt. Br. at 29-30 ("While Olsen's perjurious statements about killing Davis and having information about her disappearance and burial are concededly related to murder, Leifson's perjurious statement about not being able to recall angrily confronting or threatening Olsen for spreading rumors is not.").

Leifson appears to argue that because his statements were less material to Davis's murder investigation they were unrelated to Davis's murder investigation. However, Leifson cites no authority to support his contention that less material somehow means unrelated.  Leifson pleaded guilty to perjury and thereby acknowledged that his statements were material to the investigation.  Olsen's testimony may well be more related to Davis's disappearance and presumed death, but it does not follow that Leifson's testimony was unrelated to the murder investigation.  See, e.g., Blanton, 281 F.3d at 774, 776 (where the perjury about storing a white Monte Carlo in the defendant's garage was related to bank robbery, even though the statement was not about robbing the bank); Suleiman,

18

208 F.3d at 40 (where the perjury about why the defendant traveled from Texas to Pakistan with another person was related to the bombing of a building, even though the statements were not about the defendant's direct involvement in the World Trade Center bombing).

The district court did not clearly err when it determined that second degree murder, and not kidnaping, was the underlying criminal offense for the accessory-after-the-fact cross reference guideline.

The district court is affirmed.