NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1321
_____

UNITED STATES OF AMERICA

v.

MYKAL DERRY, a/k/a/ Koose,
a/k/a Leenie, a/k/a Cannon, a/k/a Moose

Mykal Derry,
Appellant

_____

No. 16-3489
_____

UNITED STATES OF AMERICA

v.

MALIK DERRY,
a/k/a Leek, a/k/a Lik, a/k/a Mykell Watson

Malik Derry,
Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Nos. 1-14-cr-00050-001 & 1-14-cr-00050-005)
District Judge: Honorable Noel L. Hillman
_____

Submitted Under Third Circuit LAR 34.1(a)
June 11, 2018

Before: AMBRO, JORDAN, and HARDIMAN, Circuit Judges

(Opinion filed: June 22, 2018)

_____

OPINION[*]

_____

AMBRO, Circuit Judge

Appellants Mykal and Malik Derry, step-brothers, were convicted of conspiracy to distribute one or more kilograms of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 860, discharging a firearm in furtherance of that conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and multiple counts of using a telephone to facilitate drug trafficking, in violation of 21 U.S.C. § 843(b). Mykal was also convicted of distributing heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and operating a drug stash house, in violation of 21 U.S.C. § 856. Nineteen defendants were charged as part of this conspiracy. Thirteen pled guilty and the remaining defendants were separated into two trials. We affirmed four defendants' convictions in the first trial, *see United States v. Bailey*, 840 F.3d 99 (3d Cir. 2016), and we now review Mykal and Malik's convictions and sentences in the second trial. They contest mainly their convictions for discharging a firearm in furtherance of the drug conspiracy, and focus in particular on the District Court's decision to admit evidence tying them to the shooting death of Tyquinn James. In doing so, they argue the District Court made a number of errors warranting vacation of their convictions or remand for re-sentencing. We address each argument in turn.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

## I. Admission of Non-Video Evidence of the James Murder

Mykal contests the District Court's decision to admit non-video evidence of the James murder, arguing it was cumulative and unfairly prejudicial to him. We review the Court's decision to admit the evidence for abuse of discretion. *United States v. Schneider*, 801 F.3d 186, 197 (3d Cir. 2015). Mykal claims the evidence was cumulative because the Government had already introduced plenty of evidence that supported using a firearm in furtherance of the conspiracy. However, none of the evidence items he recounts go to *discharge* of a firearm in furtherance of the conspiracy; rather, they show possession or use. *See* 18 U.S.C. § 924(c)(1)(A)(iii). Mykal does not tell us why the evidence was unfairly prejudicial. Hence we echo our opinion in *Bailey*—that the high probative value of the non-video evidence was not substantially outweighed by unfair prejudice. 840 F.3d at 118–20.

## II. Admission of Video Evidence of the James Murder

We likewise look to *Bailey* to determine whether the District Court erred by admitting video evidence of the James murder. First, we note the Government concedes the District Court erred by admitting the video under the "law of the case" doctrine rather than by undertaking the balancing test prescribed by Federal Rule of Evidence 403.[1] We

---

[1] Malik argues the Court's misapplication of the "law of the case" doctrine denied him procedural due process because he was not present in the first trial to contest that court's admission of the video evidence. Our case law does not support the claim that this resulted in constitutional harm. Moreover, Malik had access to procedures available in his own trial to contest the video's admission, which he did. We see no denial of procedural due process here.

may affirm despite this error, however, either if the video would have been admissible under the proper test or if its admission was harmless.

Both Mykal and Malik argue the video should not have been admitted under the balancing test because it was highly prejudicial and lacked probative value in light of the availability and admission of non-video evidence of the murder. We follow our analysis and holding in *Bailey* on the balancing test: the video lacked probative value because of the availability of abundant non-video evidence and its graphic nature made it highly prejudicial. 840 F.3d at 121–24. Thus, for the reasons expressed in *Bailey*, the District Court should not have admitted the video evidence. *Id.*

We review separately whether this error was harmless, *i.e.*, if "it is highly probable that the error did not contribute to the judgment." *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc) (emphasis omitted) (citation omitted). "High probability" requires us to "possess a sure conviction that the error did not prejudice the defendant." *Id.* (internal quotation marks omitted) (citation omitted). Malik asserts that the error here was not harmless because the jury chose to review the video multiple times and relied on it to acquit him of brandishing a firearm. He believes this also signals that jurors relied on the video to convict him of discharging a firearm in furtherance of the drug conspiracy.

First, Malik's acquittal of a charge based on the jury's review of the video no doubt did not prejudice him. Second, it is highly probable the video evidence did not contribute to either defendant's conviction for discharging a firearm in furtherance of a drug conspiracy in light of the substantial non-video evidence that supported that

4

conviction. Mykal and Malik's intercepted conversation in which Mykal instructs Malik to murder James, as well as evidence of other co-conspirators' prior failed attempts to murder him, are particularly compelling. Hence admission of the video in these circumstances was harmless.[2]

## III.    Suppression of Witness Statements

Malik contends the District Court erred by denying his motion under *Brady v. Maryland*, 373 U.S. 83 (1963), and holding the Government did not violate due process by withholding three witness statements. We review *de novo* the Court's conclusions of law and its findings of fact for clear error. *United States v. Perdomo*, 929 F.2d 967, 969 (3d Cir. 1991).

On appeal, Malik challenges the Court's factual findings of each witness's role in the conspiracy and knowledge base. He claims the Court's reliance on these erroneous factual findings led to legal error in holding there was no *Brady* violation. We cannot say the District Court's factual findings were clearly erroneous; the Court laid out myriad reasons to support its conclusion that each witness's role was circumscribed and none would not have knowledge of Malik or Mykal's violent acts. Moreover, each witness stated he or she did not know of the reason for the James murder.

Malik's claim of legal error is similarly unavailing. Under *Brady* the Government violates due process if it suppresses evidence favorable to an accused that is material to either guilt or punishment. 373 U.S. at 87. Evidence is favorable if it is either exculpatory

---

[2] We reiterate our admonition in *Bailey* that "the doctrine of harmless error is not a license to engage in whatever prejudicial practices an attorney might feel he or she can get away with because the harmless error analysis will inoculate the end result against reversal on appeal." 840 F.3d at 124.

or impeaching, and it is material if there is a reasonable probability that its disclosure would have led to a different result in the proceeding. *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999). We agree with the District Court's thorough and well-reasoned holding, and we adopt its reasoning as our own, that the statements were not favorable and were not material.[3] Contrary to Malik's assertion, the witnesses' lack of knowledge was not itself favorable evidence; even if they had extensive knowledge of the conspiracy's inner workings in general, that does not overcome the Court's finding that none would have had knowledge of violent acts committed by Malik or Mykal. Finally, given the strength of the Government's case that James was murdered in furtherance of the charged conspiracy, neither individually nor cumulatively would the statements' admission have been reasonably likely to change the trial outcome.

## IV. Mark Frye's Fifth Amendment Privilege

Mykal argues the District Court committed reversible error by finding Mark Frye (a heroin dealer who supplied Mykal) did not waive his Fifth Amendment privilege against self-incrimination because Frye answered a question by defense counsel before claiming the privilege. We review this claim of legal error *de novo*, *United States v. Chabot*, 793 F.3d 338, 342 (3d Cir. 2015), but accept the Court's factual findings unless they are clearly erroneous, *United States v. Ins. Consultants of Knox, Inc.*, 187 F.3d 755, 759 (7th Cir. 1999).

The Court found that Frye was confused about when to assert the privilege, and, due to his confusion, he did not knowingly and voluntarily waive it when he answered

---

[3] We affirm on these grounds and thus do not address the Government's argument that Jodi Brown's statement was not suppressed.

defense counsel's question. His counsel failed timely to question him about his understanding of the privilege, and the Court did not remedy that error by asking those questions itself. Further, when his counsel subsequently asked the proper foundation questions, Frye immediately asserted the privilege in response to defense counsel's question.

We do not disturb the Court's factual finding that Frye was confused. The transcript of his testimony shows that he intended to assert his Fifth Amendment privilege but was unsure of when to do so. The Court's legal conclusion, however, presumes confusion about *when* to assert one's privilege precludes finding the privilege waived. Of course, waiver of a Fifth Amendment privilege against self-incrimination must be voluntary, knowing, and intelligent. *Colorado v. Spring*, 479 U.S. 564, 573 (1987). But today we need not resolve the question of whether confusion about when to assert one's Fifth Amendment privilege renders a subsequent waiver involuntary or unknowing.

Even assuming the District Court erred by reaching this legal conclusion, any error was harmless. Mykal does not explain what evidence or information he would have derived from Frye's testimony. Based on our review of the record, Frye's testimony likely would have pertained to the drug conspiracy charge and not the firearm offense. Mykal subpoenaed Frye to contradict another witness's testimony corroborating wiretap and surveillance evidence of Mykal's heroin purchases. Even if Frye's testimony would have made that witness's testimony incredible, the jury still had considerable evidence—

7

particularly from the wiretaps and Mykal's admissions—to convict him of the conspiracy charge.

## V. Mykal's Sentencing

Mykal argues the Court at sentencing erred by applying the United States Sentencing Guidelines § 2D1.1(d)(1) cross-reference[4] based on the James murder, thereby increasing his base offense level to 43 and suggested minimum sentence to life imprisonment. He contends the Government did not show by a preponderance of the evidence that the murder was committed in furtherance of the drug conspiracy. He further argues the Court's application of the cross-reference violated the Sixth Amendment because the issue of whether the murder was "in furtherance of" the conspiracy was not submitted to the jury to find beyond a reasonable doubt. He cites to *Alleyne v. United States*, 570 U.S. 99 (2013), for the proposition that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.* at 102. We review for clear error the Court's factual findings in applying the Sentencing Guidelines. *United States v. Knight*, 700 F.3d 59, 62 (3d Cir. 2012). Mykal's Sixth Amendment claim gets *de novo* review. *United States v. Pavulak*, 700 F.3d 651, 671 (3d Cir. 2012).

---

[4] This provision states:

> [I]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline.

U.S.S.G. § 2D1.1(d)(1).

The Court at sentencing had to find "that murder was . . . in furtherance of the drug-related conspiracy." *United States v. Gamez*, 301 F.3d 1138, 1148 (9th Cir. 2002). And it did, as it found by a preponderance of the evidence that the James murder was in furtherance of the drug trafficking conspiracy. Given the abundance of evidence the Court recounted in support of its finding, we cannot say it clearly erred by finding that the murder was "in furtherance of" the conspiracy.

Neither did the Court violate the Sixth Amendment by not submitting to the jury the question of whether the murder was in furtherance of the conspiracy. Contrary to Mykal's suggestion, "*Alleyne* did not curtail a sentencing court's ability to find facts relevant in selecting a sentence within the prescribed statutory range." *United States v. Smith*, 751 F.3d 107, 117 (3d Cir. 2014) (emphasis omitted). That is what the Court did here—it found a fact to determine the advisory (*i.e.*, not mandatory) Guidelines range for Mykal's sentence within the statutorily prescribed range. *See* 21 U.S.C. § 841(b)(1)(A).

\*　　\*　　\*　　\*　　\*

In sum, we hold the District Court did not err by admitting the non-video evidence of the James murder, and its error in admitting the video evidence of that murder was harmless. Neither did it err by holding the suppression of certain witness statements did not violate *Brady*. We do not decide whether the Court erred by finding Frye did not waive his Fifth Amendment privilege against self-incrimination, but even assuming it did, any error was harmless. Finally, we hold the Court at sentencing properly applied the cross-reference based on the James murder. We thus affirm.

9